IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-27-KS

| | | |
|---|---|---|
| ANTHONY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for supplemental security incomes benefits ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for SSI on May 10, 2022, with an alleged onset date of March 1, 2020. (R. 970, 1132–44.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 970, 1031, 1042, 1067.) A

---

[1] Frank Bisignano became Commissioner on May 7, 2025, and is therefore substituted as a party pursuant to Fed. R. Civ. P. 25(d).

telephonic hearing was held on June 6, 2023, before Administrative Law Judge ("ALJ") Adrienne Porter, who issued an unfavorable ruling on November 29, 2023. (R. 970–1020.) On November 8, 2024, the Appeals Council denied Plaintiff's request for review. (R. 5–11.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff initiated this action on January 16, 2025, seeking judicial review of the final administrative decision, having received an extension of time do so from the Commissioner. (R. 1–2.)

## DISCUSSION

### I.    Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and

2

second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.    Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets

[this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). At step one, the ALJ found Plaintiff has not engaged in substantial gainful employment since March 1, 2020, the alleged onset date. (R. 972.) Next, the ALJ determined Plaintiff has severe impairments of left toe osteomyelitis with amputation of the left fourth digit, diabetes with diabetic polyneuropathy, post-traumatic stress disorder, and substance abuse disorders. (R. 973.)

At step three, the ALJ concluded that Plaintiff's impairments, even considering Plaintiff's substance use, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 973.) The ALJ expressly considered Listings 1.20, 1.21, and 12.00-related. (R. 973–75.)

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC), including Plaintiff's substance use,[2] and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can stand/walk for 2 hours in an 8-hour workday. He can occasionally operate foot controls with the right foot. He can occasionally climb, balance and crouch. He can understand,

---

[2] There are additional steps in the sequential evaluation process when drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935; SSR 13–2p, 2013 WL 621536 (Feb. 20, 2013), *corrected by* 2013 WL 1221979 (Mar. 22, 2013). Neither party challenges the application of these additional steps by the ALJ.

remember and carry out simple tasks and use judgment to make simple, work-related decisions. He can tolerate occasional interaction with supervisors, coworkers and the general public. He can tolerate occasional changes to simple work. When using substances, he would be off-task more than 5% of the workday, in excess of employer tolerances, and be unable to complete an 8-hour workday on a regular and continuing basis.

(R. 975.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. § 416.929 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017). (*Id.*) The ALJ then found that Plaintiff has no past relevant work and, based on Plaintiff's age, education, work experience, and RFC, including the substance use disorder, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 982–83.)

Next, the ALJ assessed Plaintiff's impairments without substance use, finding that Plaintiff would continue to have severe impairments but they would not meet a listing. (R. 984.) The ALJ then assessed Plaintiff's RFC again and found that, if Plaintiff stopped the substance use, Plaintiff would have

the residual functional capacity to perform light work as defined in 20 CFR 404.967(b) except he can stand/walk for 2 hours in an 8-hour workday. He can occasionally operate foot controls with the right foot. He can occasionally climb, balance and crouch. He can understand, remember and carry out simple tasks and use judgment to make simple, work-related decisions. He can tolerate occasional interaction with supervisors, coworkers and the general public. He can tolerate occasional changes to simple work.

(R. 986.) In making this assessment, the ALJ found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms

5

are not entirely consistent with the medical evidence and other evidence in the record." (R. 986.)

The ALJ concluded that Plaintiff can perform past relevant work.[3] (R. 986.) The ALJ then determined, if Plaintiff stopped the substance use, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: dowel inspector (DOT #669.687-014), stuffer (DOT #731.685-014), and table worker (DOT #739.687-182). (R. 987.) Based upon these findings, the ALJ concluded that Plaintiff is not disabled under the Act. (*Id.*)

## IV. Plaintiff's Argument

Plaintiff contends the Commissioner erred by failing to perform a proper functional evaluation of Plaintiff's ability to sit, stand, and walk in a full workday when assessing the RFC. (Pl.'s Br. [DE #20] at 5–13.) In contrast, the Commissioner contends that, because "[n]o relevant evidence was overlooked" by the ALJ and the ALJ "described the ways in which Plaintiff's testimony was inconsistent with the record," the RFC assessment was arrived at through appropriate evaluation and is supported by substantial evidence. (Comm'r's Br. [DE #22] at 8–15 (emphasis omitted).) For the reasons explained below, the court agrees with Plaintiff.

To enable meaningful judicial review, an ALJ must explain how the evidence led to her conclusions. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) ("To

---

[3]The ALJ did not elucidate the finding that Plaintiff could perform past relevant work, and this finding appears to be at odds with the ALJ's prior determination that Plaintiff has no past relevant work.

pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at his conclusions"); SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved"). Merely summarizing or listing evidence without providing the relevant logical explanation frustrates meaningful review. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).

In *Dowling v. Comm'r of SSA*, 986 F.3d 377 (4th Cir. 2021), the court emphasized the importance of conducting a function-by-function assessment of a claimant's abilities in accord with 20 C.F.R. § 416.945 and SSR 96–8p, 1996 WL 374184, at *1. *Dowling*, 986 F.3d at 387. Such functional assessment is especially important when a particular function, such as sitting/standing/walking, is contested and is "critically relevant" to a claimant's disability status. *See Dowling*, 986 F.3d at 388–89. Furthermore, when assessing a claimant's ability to perform a relevant function, the ALJ must explain the extent to which the claimant can perform that function over the course of a full workday. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." (citing *Brown v. Comm'r of SSA*, 873 F.3d 251, 263 (4th Cir. 2017))); *Arakas*, 983 F.3d at 100 (discussing *Brown*, *Woods*, and SSR 96–8p); SSR 96–8p, 1996 WL 374184, at *2 (RFC

represents a claimant's "maximum remaining ability to do sustained work activities" over a full work week).

ALJ Porter's assessment of Plaintiff's ability to sit, stand, and walk is deficient and prevents meaningful judicial review. ALJ Porter did not conduct the function-by-function analysis of Plaintiff's work-related abilities that is mandated by 20 C.F.R. § 416.1545, SSR 96–8p, and Fourth Circuit precedent. (R. 975–87.) Standing alone, this failure does not necessarily require remand. *See Dowling*, 986 F.3d at 388 (discussing *Mascio*, 780 F.3d at 636, and the function-by-function analysis requirement). Here, however, "[t]he parties disagree over the extent that [Plaintiff]'s medical conditions restrict[] [his] ability to [sit, stand, and walk], which makes that function 'contested.'" *Dowling*, 986 F.3d at 389. Contested functions require "a narrative discussion describing [ ] the evidence" that supports the ALJ's finding as to that function. *Dowling*, 986 F.3d at 387; *see also Thomas*, 916 F.3d at 311 (summarizing evidence, including subjective statements, throughout a decision is not a substitute for the requirement that the ALJ build a logical bridge linking that evidence with the credibility finding and RFC assessment). The hearing transcript reveals that ALJ Porter recognized the contested nature of Plaintiff's postural limitations, as she ordered a consultative examination so that "one of our doctors could do an exam and give [ALJ Porter] an opinion about . . . how long [Plaintiff] can be on [his feet] and that sort of thing." (R. 999.) Nevertheless, the ALJ's decision contains no narrative discussion explaining how she assessed Plaintiff's sitting, standing, and walking ability. (R. 975–86.)

8

The closest ALJ Porter comes to conducting the requisite functional assessment of Plaintiff's sitting, standing, and walking ability is when she explains her reasons for rejecting the medical opinion of the consultative examiner who examined Plaintiff at ALJ Porter's direction and who had opined that Plaintiff was more limited than the RFC assessed by the ALJ. (*See* R. 981–2.) Even assuming ALJ Porter's evaluation of this medical opinion complied with the relevant law and regulations, the ALJ's failure to explain how she assessed Plaintiff's sitting, standing, and walking abilities frustrates review. Importantly, ALJ Porter did not explain how the severe impairment of diabetes with diabetic polyneuropathy impacted the RFC assessment. (R. 973 (severe impairment finding), 976–77 (summarizing evidence of uncontrolled diabetes), 1265 (April 2022 pre-amputation treatment note noting etiology of left toe wound as neuropathic/diabetic), 1767–68 (reduced sensation in lower extremities and deficiencies with squatting, standing, walking, and balancing during August 2023 consultative physical examination)[4].) Given the medical evidence, it was incumbent upon the ALJ to explain her finding that Plaintiff can perform light work and can stand/walk for two hours each workday. *See Arakas*, 983 F.3d at 100; *Dowling*, 986 F.3d at 388–89; SSR 96–8p, 1996 WL 374184, at *2. Because ALJ Porter failed to explain her finding about a contested functional ability for which there is materially inconsistent record evidence, remand is necessary.

---

[4] The consultative examiner's report contains both clinical findings (R. 1764–70) and opinions about functional limitations (R. 1771–73). The consultative examiner also expressed opinions in a medical source statement. (R. 1775–80.)

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 3rd day of March 2026.

KIMBERLY A. SWANK
United States Magistrate Judge

Case 5:25-cv-00027-KS    Document 23    Filed 03/03/26    Page 10 of 10